**In re Raymond Alex GALLEGOS, d/b/a El Escondido Lounge, Debtor.**

**Bill J. SHOLER, Trustee, Plaintiff,**

**v.**

**BANK OF ALBUQUERQUE, City of Albuquerque, John Barbieri, County of Bernalillo, Iris Clear, Thomas J. Clear, Jr., Thomas J. Clear, P.A., Employment Security Commission, First National Bank of Albuquerque, Lillian Gallegos, Hertz Corporation, Joe G. Maloof, Pete Montoya, New Mexico Beverage, State of New Mexico, Pucci Distributing, Quality Import Company, R G, Inc., Richard Distributing, Servomation, Southwest Distributors, State Distributors, the United States of America, United Wholesale Liquor Company, Inc., Joe and Marie Baca Trust, Defendants.**

Bankruptcy No. 7–81–00615 MA.
Adv. No. 83–0583 M.

United States Bankruptcy Court,
D. New Mexico.

Dec. 10, 1986.

---

Thomas J. Clear, Jr., Albuquerque, N.M., for debtor and for Iris Clear.

Bill J. Sholer, Albuquerque, N.M., for plaintiff.

Jo Saxton Brayer, Albuquerque, N.M., for NM Beverage.

Mary Ann Green, Albuquerque, N.M., for Baca Trust.

O.R. Adams, Jr., Albuquerque, N.M., for State Distributing, Quality, Maloof & Pucci.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on September 25, 1986, and November 10, 1986, for oral arguments concerning the priority of liens held by the liquor distributors vis-a-vis the secured creditors. At the hearing, the Court ruled that the claims of New Mexico Beverage Company based on the 1976 and 1977 liquor sales are not barred by the statute of limitations.

Two issues remain for the Court's resolution. The first issue concerns the status of the liens held by Iris L. Clear in Alcoholic Beverage Control of New Mexico Liquor License Number 1441 ("Liquor License No. 1441"). The second issue concerns the effect of the Thirty Day Credit Law, § 60–10–8 N.M.S.A. 1978, on the liens of the wholesale liquor distributors. Upon the determination of these two issues, the rela-

tive priority of all lien claimants in this case will be resolved.

## STATUS OF LIENS HELD BY IRIS L. CLEAR

The facts concerning the first issue are undisputed. The assignee of debtor's attorney, Iris L. Clear, seeks satisfaction of her claim against debtor's estate from the proceeds of the sale of Liquor License No. 1441. Iris L. Clear claims a security interest in Liquor License No. 1441 securing the payment of pre-petition attorney fees owed by debtor to debtor's attorney, Thomas J. Clear, Jr. The security interest at issue results from debtor's execution of two promissory notes.

The first note was executed and delivered to Thomas J. Clear, Jr., P.A. A security agreement securing payment of the note and a financing statement were filed of record on April 21, 1978. The future advances clause contained in this agreement secured "such additional sums as may hereafter be advanced to the debtor or expended by the secured party or its assigns on behalf of the debtor or his assigns...." The secured party referred to in the agreement was "Thomas J. Clear, Jr., P.A., a New Mexico Corporation."

The second note was executed and delivered to Thomas J. Clear, Jr. and Iris L. Clear. A security agreement securing payment of the second note and a financing statement were filed of record on January 31, 1980. The secured party who made the advances resulting in this second note was Thomas J. Clear, Jr. and Iris L. Clear, individually. Both notes were assigned to Iris L. Clear on November 15, 1982.

Debtor filed a chapter 11 petition in bankruptcy in May, 1981. In March 1983, the chapter 11 proceeding was converted to a chapter 7 proceeding. During the period between May, 1981, and March, 1983, debtor, as debtor-in-possession, employed Thomas J. Clear, Jr., as his attorney. Thomas J. Clear, Jr. did not seek court approval for his appointment as attorney for the debtor-in-possession. However, the lien held by Thomas J. Clear, Jr. was listed in debtor's schedules and its existence made known early in the proceedings.

Pursuant to § 327(a) and § 1107(a) of the Bankruptcy Code, a debtor-in-possession may employ an attorney who does "not hold or represent an interest adverse to the estate, and that [is a] disinterested [person]" to represent or assist the debtor-in-possession in carrying out his duties. Section 1107(b) modifies this limitation on the employment of an attorney by prohibiting an attorney's automatic disqualification for employment "solely because of such person's employment by or representation of the debtor before the commencement of the case." Bankruptcy Rule 2014 requires an attorney employed pursuant to § 327 to make application to the court seeking court approval of the employment, stating, among other things, "all of the person's connections with the debtor, creditors, or any other party in interest...."

In the present matter, the lien on Liquor License No. 1441 held by Thomas J. Clear, Jr. is clearly a pre-petition lien for attorney's fees. As such, at the time debtor filed his bankruptcy petition in May of 1981, Thomas J. Clear, Jr. was a secured creditor and had an interest adverse to the estate within the meaning of § 327(a). Although this prior representation did not automatically bar Thomas J. Clear, Jr. from representing the debtor in the chapter 11 bankruptcy proceeding, he was required to advise the court of his prior connections with the debtor and to obtain court approval of his employment. This he did not do.

Attorney for the Baca Trust cites *In re Martin*, 62 B.R. 943, 14 B.C.D. 1162 (Bkrtcy.D.Maine 1986), for the proposition that Thomas J. Clear, Jr.'s lien should be invalidated. Like the present case, *Martin* involved attorneys who had filed a chapter 11 petition for the debtors prior to the case's conversion to chapter 7. In *Martin*, debtors had first contacted the attorney about two weeks prior to the debtor actually filing bankruptcy. Subsequently, debtor's attorney had been given a mortgage deed by debtors to secure attorneys' fees

incurred in connection with their representation in the bankruptcy case. The debtors had requested and received the Court's approval of an application for authority to employ the attorneys. Upon hearing of the attorney's application for interim compensation and the Creditors' Committee's objections thereto, the Bankruptcy Court determined that the attorneys,

> by holding a mortgage on the debtors' real estate, held an interest adverse to the estate of the debtors, contrary to 11 U.S.C. Sec. 327(a) which allows the employment of attorneys who are "disinterested persons."

*Id.,* 62 B.R. at 945, 14 B.D.C. at 1162. Consequently, the Bankruptcy Court invalidated the mortgage but allowed compensation for services and expenses.

The district court affirmed the bankruptcy court's ruling in *Martin.* In doing so, and because the district court found only potential conflicts presented by the fee arrangement, it deferred to the bankruptcy court's determination "of the severity of those potential conflicts and to [its] discretion in authorizing fee arrangements as well as in determining the amount of fee awards." *Id.,* 62 B.R. at 948, 14 B.C.D. at 1165.

If the lien in question had been as recent as and based upon the same type of representation as the lien considered in *Martin,* this Court would have been tempted to follow *Martin* in setting aside the lien held by debtor's attorney. However, in the present matter, unlike the situation in *Martin,* the lien of debtor's attorney originated from representation unrelated to and as much as three years prior to the bankruptcy proceeding. Further, while the disclosure by debtor's attorney of his lien and interest in the bankruptcy proceeding was at best sloppy, debtor's attorney did make known the existence of the lien very early in the proceeding by including it in debtor's schedules.

In the present matter, the Court finds that there has been no showing of any actual conflict of interest in debtor's attorney's representation. Therefore, there is no reason that debtor's attorney should be denied his fees for services and expenses for his prior representation of the debtor. Further, no authority has been found which would require setting aside a lien of this nature. Thus, the lien will be deemed valid. However, no attorney's fees shall be awarded debtor's attorney for his representation of debtor in the chapter 11 proceeding. To the extent debtor's attorney charged and collected a retainer or fees for the chapter 11 proceeding, he is required to remit such monies to the estate.

▇ The Court also finds that, contrary to the argument of debtor's attorney, the future advances clause in the first note executed to him did not secure the second note and the priority of the second claim does not relate back to the date of the first note.

### THIRTY DAY CREDIT LAW

▇ The second issue revolves around the applicability of the Thirty Day Credit Law, § 60–10–8 NMSA 1978. From time to time, the wholesale liquor distributors sold alcoholic beverages to the debtor. Several of these wholesalers now claim liens against the proceeds of the sale of Liquor License No. 1441 pursuant to § 60–7–18 NMSA 1978. This section, in effect at the time the alcoholic beverages were sold to the debtor, provides that a wholesale distributor who supplies liquor in connection with the operation of a business shall have a lien on the license. The lien is deemed to have arisen on the date the debt was originally incurred. This statute allows a wholesale liquor distributor to forego the additional requirement of filing a financing statement each time a credit sale delivery is made a retail distributor. However, it does not allow the distributor to claim priority for each subsequent sales as of the date of the first transaction.

Furthermore, the Thirty Day Credit Law, also in effect on the date of the liquor sales, prohibited a liquor wholesale from agreeing to extend credit to a liquor retailer for more than 30 days from the date of

an invoice. § 60–10–8 N.M.S.A. 1978. Section 60–11–1 NMSA 1978 barred the enforcement of any debt incurred contrary to the Thirty Day Credit Law.

The wholesale liquor distributors argue that the Thirty Day Credit Law is inapplicable because they never entered into an agreement to extend credit for the sale of alcoholic beverages. The Baca Trust, on the other hand, contends that further liquor sales by the wholesalers on credit after the failure of debtor to pay previous bills more than 30 days old implies an agreement to extend credit. Consequently, the Baca Trust maintains that any of these debts violating the Thirty Day Credit Law are uncollectable and that the wholesalers should only be able to collect for the amount due from credit sales made within the first thirty days from the date of the first unpaid invoice.

We find that an express formal written agreement to extend credit is not what the statute contemplates. From a review of the invoices submitted, it is obvious that the distributors were extending credit long after the debtor had been in arrears in excess of thirty days. We find such implied agreement to extend credit to be conduct prohibited by the statute. The question remains as to when it can be said that the distributor made such implied agreement.

It is possible that on the thirtieth day after the first unpaid invoice a wholesale liquor distributor would not know whether a customer who has paid regularly up to that time will or will not pay the bill which is thirty days old, particularly in situations where customers are billed monthly rather than whenever an order is filled. In fact, if the relationship between a customer and a wholesale liquor distributor has been ongoing, the distributor has every reason to assume that such payment will be made. Additionally, payments made are not necessarily instantaneously credited to a customer's account; rather, bookkeeping time would be expected to delay the crediting of a payment to an account. Because of this, this Court finds that fifteen days is a reasonable amount of time for a wholesale liquor distributor to determine what bills are past due from purchasers.

Therefore, this Court finds that any credit sales of liquor made to debtor by the wholesale liquor distributors within the first forty-five days from the date of the first unpaid invoice are in conformance with the requirements of § 60–10–8 and are collectable, while any credit sales made after this forty-five day period demonstrate an implicit agreement to extend credit and, thus, are in violation of § 60–10–8 and uncollectable.

This memorandum constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.